MAGGIE WALLACE, Appellant, v. MARGARET WALLACE.

**Default judgments:** MOTION TO SET ASIDE. While a motion to set aside a default is not the proper remedy when not filed within the statutory time, still where it contains all the essential allegations required in a petition for that purpose and is verified by attached affidavits, it will be treated as a sufficient petition under Code sections 4091 and 4094.

**Same:** MISCONDUCT OF COUNSEL: PRESUMPTION. Where a motion to set aside a default was confessed by plaintiff's attorney in the absence of defendant and his counsel, and time was given to answer, and upon expiration of such time a second default was taken which was again set aside on defendant's motion, the fact that the court was misled in making the order when the first motion was confessed may be inferred from the fact that the second motion was sustained.

**Same:** FRAUD: NEW TRIAL. A litigant will not be allowed to profit from the breach of an agreement between attorneys respecting a disposition of a cause; and where a motion to open a default was confessed in the absence of opposing counsel, although there was an understanding that the matter should not be taken up until both counsel were present and time was given to answer, of which defendant's counsel had no notice or knowledge, but upon expiration of the time a second default was taken, defendant is held entitled to a new trial on the ground of fraud under the provisions of Code section 4091.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

WEDNESDAY, FEBRUARY 17, 1909.

MOTION to set aside a default was sustained, and the plaintiff appeals.—*Affirmed.*

*Shull, Farnsworth & Sammis* and *O. D. Nickle,* for ellant.

*F. B. Robinson* and *Jepson & Jepson,* for appellee.

LADD, J.—The defendant resides in Ireland. The plaintiff is the wife of her son, James Wallace, living in Sioux City. Another son, John M. Wallace, who had resided in that place, owned certain real estate prior to his death. A deed from him to a sister, Margaret Wallace (now Mrs. Tinney), appeared of record, and after his death another deed from Margaret Wallace (Tinney) to plaintiff was recorded. The plaintiff instituted this action to quiet title, and obtained a decree as prayed against defendant, March 20, 1907, on service by publication. Thereafter, and about August 20th of the same year, defendant by her attorney, Frank B. Robinson, moved to have the action retried, and that she be permitted to make defense. On September 17, 1907, O. D. Nickle appeared in court for plaintiff, and confessed the motion, whereupon the court ordered that security for costs and an answer be filed by October 1st following. As this was not done, on the following day Nickle demanded default, and an order to that effect was entered. The defendant on December 6, 1907, moved that the last-mentioned order be set aside and canceled, and the cause be opened and retried, and on hearing January 20, 1908, this motion was sustained. From this last order the plaintiff has appealed.

It will be noted that the motion was not filed until the term following that at which the order assailed was entered, and subsequent to the second day, so that relief by motion was not available. Sections 3790, 4093, Code. The remedy in such cases is by petition. Sections 4091,

4094. The motion for new trial, however, contained all
the allegations essential to a petition, and

**1. Default Judgments: motion to set aside.** all of these were verified by the affidavits attached thereto, so that the court might well have disregarded the objection that the remedy was by petition rather than by motion, and treated the paper filed as a petition, in compliance with the statute referred to. *Council Bluffs L. & T. Co. v. Jennings,* 81 Iowa, 476. See, also, *Town of Storm Lake v. Railway,* 62 Iowa, 218; *Silzer v. Fenzloff,* 112 Iowa, 491.

II. The default in this cause was procured through a bit of sharp practice indulged in by O. D. Nickle, attorney for plaintiff. Sometime after Robinson had filed

**2. Same: misconduct of counsel: presumption.** his motion for a retrial these attorneys had a conversation, the accounts of which, appearing in their respective affidavits, do not differ very materially. Robinson swore that on the 4th or 5th day of September, 1907, O. D. Nickle, attorney of record herein for the plaintiff, came to me, and said, in substance: "I have been studying the law and the cases in reference to your application for a retrial in this case, and I understand that we have no right to appear or to contest or resist the same, nor even any right to notice, or to be present when you call it up, but as a matter of courtesy, I would like to have an understanding that you will let me know before anything is done about it. To which I replied that I was about to be gone from town for a month or so, and would not call the matter up for an indefinite time, as I was not ready to answer, not having sufficient information as yet to do so properly, that I had made the application that they might have knowledge of our intention to contest their judgment, and that I would be very glad to have them present whenever I should call it up for an entry by the court, and would notify Mr. Nickle, as requested." The affidavit also stated that Nickle, in calling up the motion for retrial, represented

to the presiding judge that E. P. Farr, Esq., was asso-
ciated with Robinson in the defense, and that he would
notify him, and, upon procuring the order of default for
failure to answer, falsely represented to the said judge
that said Farr had been notified; that Robinson left the
city September 5th, and did not return until October 4th,
and three days later had a conversation with Nickle con-
cerning his interview with Mrs. Tinney at Seattle, and
they frequently met, but no reference was made to the
default until on November 30th, when Robinson notified
Nickle that he would call up the motion for retrial; that
no motion book was used in the court; and that it was the
uniform custom of the court, either to make sure that op-
posite counsel had been advised of the intention to procure
an order, or cause him to be notified of its entry.    Another
affiant stated that she had heard the conversation between
Robinson and Nickle when the latter told Robinson of
the default.    That Robinson said, "Did you not agree with
me that this matter should only be called up by me, and
that I should notify you before calling it up?" to which
Nickle replied, "I asked you to notify me when you would
call it up, but that did not prevent our confessing your
motion at any time we wanted to."    That Robinson said,
"Even without notice to me, and during my absence?"
and Nickle's response was, "Mr. Farr knew all about it."
Robinson inquired "what Farr had to do with it," to
which Nickle answered that "he was associated with you
in the case."    Farr's affidavit was to the effect that he was
not employed in the case and was never advised by Nickle
concerning anything in the matter.    On the other hand,
Nickle in his affidavit denied that the conversation with Rob-
inson was "in words or substance" as stated by Robinson;
denied that he ever falsely represented to said judge that
Farr was associated with Robinson in the case, or that he
would notify him, and stated that about August 1st, "I
had just learned that he had filed a motion for a retrial

in the *Wallace* case, and that I had not looked up the law on the question as to whether or not we are entitled to notice in proceedings of this kind, but that I did not want it called up for a day or two, until I could see what the law provided as to our right to appear therein, and that said Robinson in reply stated to me that he did not have his evidence in shape, and was not ready to call it up; that on the next regular assignment, being the next Monday of the September term of court, I assigned the said motion for hearing, Hon. F. R. Gaynor, Judge, setting it for Wednesday morning, September 11, 1907; that on Monday afternoon I met E. P. Farr, an attorney, whose affidavit is attached as heretofore mentioned, and he stated to me, in words or substance as follows: 'I see you assigned the motion in the Wallace matter this morning,' to which I replied that I had, and he said that Mr. Robinson was out of town, and would not be back for at least a week or two." He also swore that the day the motion for retrial was assigned for hearing he telephoned to the office of Robinson, and was informed that he was out of the city, that "for several days I attempted to get some one to appear so that the motion might be heard; that on September 17th he told the court of his conversation with E. P. Farr. Wallace, plaintiff's husband, swore that he was present at the time the order ruling on the motion for retrial was entered, and that Nickle represented that Farr was interested in the matter, but was not an attorney of record. The stenographer of Robinson made oath that she was at Robinson's office at all times during office hours, and that Nickle did not telephone there during Robinson's absence, and McHugh, who became Robinson's partner after the filing of the motion for retrial, stated that, though he met Nickle frequently during the time, no mention was made of the motion.

This somewhat extended statement of the contents of the several affidavits has seemed essential to the full under-

standing of the facts. Therefrom an understanding between Nickle and Robinson that the motion for retrial was to be taken up when Robinson should elect is clearly to be inferred. If for any reason Nickle thereafter concluded that Robinson was unduly deferring the matter, he should have so advised him. But according to the affidavits, Nickle, unbeknown to his adversary, and after he had lulled him into security by asking for a few days before the motion should be called, as he says, or that he be notified when it should be called, as Robinson swore and is the more likely, and by interposing no objection thereto when so promised, with the statement that he (Robinson) would be away some time ascertaining facts for his answer, and after Robinson had departed, as he was aware, went into court, and had the motion filed by Robinson assigned for hearing at a date when he knew Robinson would be absent. And on the day the order fixing the time for filing answer and cost bond, his only purpose in mentioning the alleged conversation with Farr to the court must have been to mislead the court into thinking that defendant was not unrepresented, and that an attorney interested in the cause was, or would be, aware of the order. That the court was misled does not appear from the affidavit of the presiding judge, but as the motion was ruled on by the same judge who made the order, it may be inferred that the court so found. See *Foley v. Leisy Brewing Co.*, 116 Iowa, 176; *Willett v. Millman*, 61 Iowa, 123.

Knowing that he had misled Robinson into thinking the motion would not be taken up until he so elected and advised Nickle, the latter procured the entry of default

3. SAME: fraud: new trial.

the day before his return, and then, although meeting him and talking of the case, made no reference to what had been done until nearly two months later. Such tactics can not be tolerated. Good faith in carrying out arrangements of this kind be-

tween attorneys is absolutely essential to the orderly disposition of causes in court, and to allow a litigant to profit from their breach would be a reproach to the administration of justice. The case is not like *Johnson, Lane & Co. v. Nash-Wright Co.,* 121 Iowa, 173, for there the attorney having charge of the defense was notified, and another member of the firm was present, when default was taken. Here not only was Robinson not notified, but his adversary purposely waited until he was beyond reach, and then clandestinely, in so far as his opponent was concerned, procured the entry of default. This, as it was in violation of the understanding had, amounted to a fraud, such as contemplated by section 4091 of the Code, authorizing a new trial. The fact that the record recited that Robinson was present September 17, 1907, was no obstacle in the way of the court ascertaining the fact. Such a record is not to be treated as a verity when directly attacked, as here, in the same case, and for the manifest purpose of correcting errors in the prior proceedings of the court.

The order setting aside the default and allowing defendant to answer is *affirmed.*